**UNITED STATES of America**

v.

**Gilbert L. BECKLEY et al.**

**Crim. No. 24167.**

United States District Court
N. D. Georgia,
Atlanta Division.
Sept. 29, 1965.

Charles L. Goodson, U. S. Atty. for N. D. of Georgia, Atlanta, Ga., for the United States.

Edward Bennett Williams, Washington, D. C., James R. Venable, Joe Salem, Atlanta, Ga., for defendants.

SLOAN, District Judge.

Count One of the indictment in the above captioned criminal action, briefly stated, charges that defendants from on or about the 1st day of January, 1961, up to and including on or about the 27th day of June, 1961, did unlawfully, etc., combine, conspire, confederate and agree with each other and with others unknown, to commit offenses against the United States, to-wit, (a) to devise a scheme and artifice to defraud the American Telephone and Telegraph Company, its subsidiaries, etc., by depriving said company of monies due and payable for long distance telephone calls and by depriving the company of the honest services of its employees and by causing the facilities of the company to be used in a manner prohibited by its tariffs, it being alleged that all of the above was done by transmitting and causing to be transmitted by wire in interstate commerce, sounds, to-wit, telephone calls and conversations for the purpose of executing such scheme and artifice in violation of 18 U.S.C. § 1343, and (b) to knowingly cause the telephone company, a common carrier within the meaning of 47 U.S.C. § 153 to extend to persons facilities in interstate wire communication other than filed by the company with the Federal Communications Commission pursuant to 47 U.S.C. § 203(a), by willfully and knowingly causing the company to extend to defendants facilities which were used

for unlawful purposes, to-wit, for the purpose of conducting gambling activities in violation of the laws of the United States and of the several states and that the extension of such facilities for other than the purposes specified in the schedules filed by the company with the said Commission, all in violation of 47 U.S.C. §§ 203(c) and 501.

It is alleged that it was a part of said conspiracy that defendants Beckley and Lowe would appropriate to their own use the services of the defendant, James C. Gunter, an employee of the Long Lines Department of the telephone company, to place long distance calls from points within the various states of the United States to points in other states and foreign countries for defendants Beckley and Lowe which calls would be placed without either the authorization of the telephone company or the payment of the toll charges due and owing for such calls.

It is alleged that it was also a part of such conspiracy that defendants would conceal from the telephone company the placing of such calls in connection with the gambling activities of defendants Beckley and Lowe by using the services of defendant Gunter to place such calls as a consequence of which no toll slips or other record would be made as to the existence, origin point, or terminal point of long distance calls made by said defendants. The indictment sets out 26 overt acts allegedly committed by defendants in furtherance of the alleged conspiracy, these overt acts consisting of the placing of long distance calls by defendants at alleged specific times and to alleged specific places, all charged to be in violation of 18 U.S.C. § 371.

Count Two of the indictment charges that defendant Gilbert L. Beckley, during the period alleged in Count One, devised a scheme and artifice to defraud the telephone company by depriving it of the money due it for long distance telephone calls, by depriving it of the honest services of its employees and by causing the facilities of the telephone company to be used in a manner prohibited by

statute and that the said defendant did, on a specific date alleged, cause sounds to be transmitted by wire communication in interstate commerce, from and to specific places named, without the authorization of the telephone company, in a manner prohibited by its tariffs, that is to say, to conduct unlawful gambling activities, and without the payment of the charges therefor, in violation of 18 U.S.C. § 1343.

Count Three, briefly stated, charges that during the period alleged in Count One, defendant Gilbert L. Beckley devised a scheme and artifice to defraud the telephone company by depriving it of the honest services of its employees and by causing its facilities to be used in a manner prohibited by its tariffs and that for the purpose of executing said scheme that defendant Beckley caused sounds to be transmitted from Newport, Kentucky to Atlanta, Georgia and thence to Los Angeles, California, by wire communication in interstate commerce by utilizing the services in Atlanta, Georgia, of defendant James C. Gunter, an employee of the Long Lines Department of the telephone company, without the authorization of the telephone company and in a manner prohibited by its tariffs, "that is to say, to conduct unlawful gambling activities and which communication was transmitted without the payment of toll charges, all in violation of 18 U.S.C. § 1343".

The remaining counts of the indictment charge similar offenses to those charged in Counts Two and Three except as to the particular defendant named therein, the date of the calls made, etc.

The defendants have filed motions to dismiss the indictment on the following grounds:

1. The indictment should be dismissed because it fails in two respects to charge an offense under 18 U.S.C. § 1343, upon which the conspiracy and each of the substantive counts are based.

(a) Interstate wires were not used to execute any fraud alleged in this indictment as required by the terms of 18

U.S.C. § 1343 in order to give the federal government jurisdiction.

(b) The alleged scheme to cheat the telephone company was not a fraud under the terms of the statute because it involved no false pretenses, no representations and no promises.

2. The part of each count which charges a violation of 47 U.S.C. § 203(c) should be dismissed. Such violation is alleged fully in (b) of the conspiracy count, and as a part of the fraud in each of the substantive counts. The defendants are incapable of causing the telephone company to extend its facilities unlawfully in violation of 47 U.S.C. § 203(c). The statute is violated only when the telephone company itself acts.

3. The indictment should be dismissed because it is based upon evidence in violation of 47 U.S.C. § 605 and defendants' Fourth Amendment rights against unreasonable search.

The motions of the defendants to dismiss the indictment are now properly before the Court for determination under Local Rule 8.

## SUFFICIENCY OF THE CHARGES IN THE INDICTMENT TO CONSTITUTE AN OFFENSE UNDER TITLE 18, U.S.CODE, § 1343. (SEE APPENDIX)

The defendants contend that the wires were not used for the purpose of executing the alleged fraudulent scheme. Defendants contend that the wires were not used to carry out the fraud because the use of the wires was the fraud.

■ The scheme charged in the indictment includes the use of the wires.

The statute proscribes transmission by telephone "for the purpose of executing" a scheme to defraud. The courts have found such purpose in wire and mail fraud cases where the use of the facility was "in furtherance of the scheme". Milam v. United States, 322 F.2d 104, 109 (5 Cir.); A step in execution of the scheme—Huff v. United States, 5 Cir., 301 F.2d 760, 765—"as the means of consummating frauds",

Abbott v. United States, 239 F.2d 310, 314, (5 Cir.). The defendants contend that their use of the wires was too closely connected with the execution of the scheme for the statute to apply; that the scheme was executed for the purpose of using the wires. That the wires were not used to carry out the fraud because the use of the wires was the fraud.

The government contends that long distance calls made in pursuance of a scheme to defraud the telephone company of its long distance tolls have as one of their purposes the execution of that scheme. The fact that there were also other purposes in making the calls would not effect this. Linden v. United States, 254 F.2d 560, 568 (4 Cir.).

■ Where the use of the wires is an essential part of the scheme to defraud such use is "for the purpose of executing" the scheme. Gregory v. United States, 253 F.2d 104, 109, 110 (5 Cir.).

## DOES THE ALLEGED SCHEME TO CHEAT THE TELEPHONE COMPANY CONSTITUTE A FRAUD WITHIN THE TERMS OF TITLE 18, U.S.CODE, § 1343? (SEE APPENDIX)

The defendants contend that the offense charged is just a simple scheme to cheat the telephone company. The defendants scheme as alleged in the indictment was to deprive the telephone company of its profits by dishonest and fraudulent means. Abbott v. United States, supra.

Defendants contend that the indictment fails to allege a scheme to defraud within the meaning of Title 18, U.S. Code, § 1343 because there were no false pretenses, representations or promises to the telephone company.

■ It is not necessary that there be false representations or promises.¹ All that is necessary is that it be a scheme calculated to deceive. Silverman v. United States, 213 F.2d 405 (5 Cir.).

■ There may be a scheme to defraud by means other than express false representations. Shushan v. United States, 117 F.2d 110 (5 Cir.).

If there be a scheme reasonably calculated to deceive and the wires are used in the execution of it there need not be misrepresentation of fact. Silverman v. United States, supra.

■ The indictment alleges, inter alia, that the defendants conspired to defraud the telephone company "by depriving the telephone company of monies due and payable for long distance telephone calls, by depriving the telephone company of the honest services of its employees and by causing the facilities of the telephone company to be used in a manner prohibited by its tariffs", by transmitting telephone calls and conversations for the purpose of executing such scheme. This alleges a scheme to deceive the telephone company—a scheme to defraud. Abbott v. United States, supra; Shushan v. United States, supra; United States v. Proctor and Gamble, 47 F.Supp. 676, 679 (D.Mass.).

ARE THE DEFENDANTS CAPABLE OF CAUSING THE TELEPHONE COMPANY TO EXTEND ITS FACILITIES IN VIOLATION OF TITLE 47, U.S.CODE, § 203(c)? (SEE APPENDIX)

The indictment charges the defendants with causing the telephone company to extend its facilities in interstate wire communications other than those specified in the schedules filed by the telephone company with the Federal Communication Commission by willfully and knowingly causing the telephone company to extend to the defendants facilities in interstate wire communications which telephone services were used for unlawful purposes, to-wit: For the purpose of conducting gambling activities in violation of the laws of the United States and of the several states in which the calls originated in violation of §§ 203(c) and 501, Title 47, United States Code.

Section 501, in pertinent part, provides that any person who willfully, knowingly does or causes or suffers to be done any act, matter or thing in this Chapter prohibited or declared to be unlawful shall upon conviction thereof be punished for such offense.

■ The defendants are capable of causing the telephone company to extend its facilities in violation of 47 U.S.C., § 203(c).

IS THIS INDICTMENT BASED UPON EVIDENCE OBTAINED IN VIOLATION OF THE DEFENDANTS' FOURTH AMENDMENT RIGHTS OR TITLE 47, U.S.CODE, § 605? (SEE APPENDIX)

Defendants contend that monitoring of their telephone calls by the telephone company violated their Fourth Amendment Rights against unreasonable search and their rights of privacy under Title 47 U.S.Code, § 605.

■ The interception of telephonic messages without trespass upon the property of the defendants did not amount to search or seizure within the meaning of the Fourth Amendment. Olmstead v. United States, 277 U.S. 438, 457, 466, 48 S.Ct. 564, 72 L.Ed. 944.

■ Section 605 does not prohibit the telephone company from monitoring its own lines. The restrictions placed on the telephone company by Title 47 of the United States Code does not deprive the telephone company of the right to employ reasonable means to detect and prevent violations thereof by its own employees. Where, as is here alleged, a corrupt employee allows long distance calls to be covertly made without charge and in a manner which bypasses the regular bookkeeping procedures of the company the only reasonable means of protection is the monitoring of such calls.

DOES THE ACTION OF THE TELEPHONE COMPANY IN DIVULGING WHAT WAS HEARD IN THEIR MONITORING OF THE CALLS VIOLATE ANY PROTECTIVE RIGHT DEFENDANTS CLAIM TO HAVE UNDER TITLE 47 U.S.CODE, § 605? (See APPENDIX)

A protection intended and afforded by 47 U.S.Code, § 605 does not avail the defendants under the circumstances

alleged in this indictment. See United States v. Gallo, 123 F.2d 229, 231 (2 Cir.); United States v. Gris, 247 F.2d 860, 864 (2 Cir.).

■ As was said in Casey v. United States, 191 F.2d 1, 4 (9 Cir.) reversed on other grounds, 343 U.S. 808, 72 S.Ct. 999, 96 L.Ed. 1317:

" * * * 47 U.S.Code 605, which prohibits the interception and divulgence of communications without the consent or approval of the sender, refers to communications over licensed facilities. The appellants were unlicensed operators transmitting voice messages over an unlicensed station, without call letters, on a portion of the band reserved for Morse Code operations. *The protections of the Act were never intended for, nor do they cover, such communications which are themselves illegal.*" (Emphasis supplied) See also Sugden v. United States, 226 F.2d 281, 285 (9 Cir.).

The telephonic conversations of the defendants were not monitored in violation of the Fourth Amendment nor 47 U.S.C. § 605 and should not be suppressed.

The motions of the defendants to dismiss the indictment are overruled and denied.

## APPENDIX

18 U.S.C. § 1343 provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signa's, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

47 U.S.C. § 203(c) provides:

"No carrier, unless otherwise provided by or under authority of this chapter, shall engage or participate in such communication unless schedules have been filed and published in accordance with the provisions of this chapter and with the regulations made thereunder; and no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, between the points named in any such schedule than the charges specified in the schedule then in effect, or (2) refund or remit by any means or device any portion of the charges so specified, or (3) extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule."

47 U.S.C. § 605 provides:

"No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication

or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; *Provided,* That this section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication broadcast, or transmitted by amateurs or others for the use of the general public, or relating to ships in distress."